IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No. 1:20-cr-73 |
| | ) | |
| THOMAS RICHARD GALLAWAY, | ) | The Hon. T.S. Ellis, III |
| | ) | |
| Defendant. | ) | |

FILED IN OPEN COURT

CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

## STATEMENT OF FACTS

The United States and the defendant, THOMAS RICHARD GALLAWAY (hereinafter "the Defendant") agree that the allegations in the Criminal Information and the following facts are true and correct, and that had the matter gone to trial the United States would have proven them beyond a reasonable doubt:

1. Between in and around September 2015 and continuing through in and around April 2016, in Fairfax County, Virginia, within the Eastern District of Virginia and elsewhere, the Defendant, did unlawfully, knowingly, and intentionally combine, conspire, confederate, and agree with Jimmy Oliver Zeigler II, Kimberly Roxann Braun, Kallie Ann Sack, and other persons, both known and unknown, to unlawfully, knowingly, and intentionally distribute fifty (50) grams or more of methamphetamine, a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and 846.

2. Beginning in 2015, the Defendant began traveling to California to obtain large quantities of methamphetamine from different sources of supply in Los Angeles and San Diego, California. On these trips, the Defendant regularly purchased multiple pounds of methamphetamine from different sources of supply. The Defendant would then ship the

methamphetamine to the Washington, D.C. metropolitan area. The Defendant would then distribute this methamphetamine to users and other distributors in Fairfax County, Virginia, and elsewhere.

3. Around this time, the Defendant met Kimberly Roxann Braun in San Diego, California. Braun and her boyfriend, Hilario Silva, distributed methamphetamine and were one of the Defendant's sources of supply.

4. Beginning in and around September 2015, the Defendant entered into a conspiracy with Jimmy Oliver Zeigler II. Zeigler agreed to travel to California to obtain multiple pounds of methamphetamine. In return, the Defendant paid for Zeigler's travel and sold Zeigler distribution quantities of crystal methamphetamine at a reduced rate. On these trips, Braun arranged for Zeigler to purchase multiple pound quantities of methamphetamine. In total, Zeigler traveled to California on at least three separate occasions and purchased multiple pounds of methamphetamine on each occasion.

5. In and around November 2015, Braun retrieved methamphetamine from Hilario Silva's safe. At that time, Silva was incarcerated on federal drug trafficking charges. Braun then mailed a package containing approximately 450 grams of methamphetamine (actual) to the Defendant. The Defendant then further distributed this methamphetamine within the Eastern District of Virginia and elsewhere.

6. On April 10, 2016, the Defendant traveled to Los Angeles, California, to obtain distribution amounts of methamphetamine. Upon arriving in Los Angeles, the Defendant communicated with one of his sources of supply ("Co-Conspirator 1") that he wanted to purchase eight (8) pounds of methamphetamine. Co-Conspirator 1 agreed to the transaction.

Shortly thereafter, Co-Conspirator 1 met with the Defendant. At that meeting, the Defendant provided Co-Conspirator 1 with $32,000 in U.S. currency. Law enforcement, however, conducted surveillance of this meeting and stopped Co-Conspirator 1's vehicle. Law enforcement subsequently seized the $32,000. As a result, the Defendant did not obtain the eight (8) pounds of methamphetamine.

7. Shortly thereafter, on or about April 12, 2016, the Defendant drove to San Diego, California, to meet with Kallie Ann Sack. During this meeting, the Defendant asked Sack to obtain pound quantities of methamphetamine for him. The Defendant further asked Sack to then ship the methamphetamine to him in the District of Columbia. Sack agreed and stated that she would be able to obtain approximately two (2) pounds of methamphetamine. The Defendant provided Sack with $9,000 in U.S. Currency and then showed Sack how to package the methamphetamine for shipment.

8. On or about April 19, 2016, Sack shipped the methamphetamine, which was contained in a pelican case, in a U.S. Postal Service package from a Post Office in Fallbrook, California. Sack also separately shipped the keys to the pelican case. Both packages were sent to the Defendant in the District of Columbia.

9. On or about April 20, 2016, the package sent by Sack arrived at Washington Dulles International Airport. After obtaining a court-authorized search warrant, law enforcement opened the package, which contained approximately two (2) pounds and four (4) ounces of a white crystal substance, which field-tested positive for methamphetamine.

10. On or about April 22, 2016, law enforcement executed a controlled delivery of the package that Sack mailed from Fallbrook, California. At that time, the Defendant admitted to

purchasing the methamphetamine. The Defendant further admitted to distributing methamphetamine within the Eastern District of Virginia and elsewhere.

11. The suspected methamphetamine was tested by the Drug Enforcement Administration Mid-Atlantic Laboratory. The lab results confirmed that the package contained approximately 864 grams of methamphetamine (actual).

12. During the pendency of the conspiracy, the Defendant was personally involved in the distribution of, or it was reasonably foreseeable to the Defendant that his co-conspirators distributed in furtherance of the conspiracy, 4.5 kilograms or more of methamphetamine (actual) (Level 38).

13. The acts taken by the Defendant in furtherance of the offense charged in this case, including the acts described above, were done willfully and knowingly with the specific intent to violate the law.

14. The Defendant acknowledges that the foregoing Statement of Facts does not describe all of his conduct relating to the offense charged in this case nor does it identify all of the persons with whom the Defendant may have engaged in illegal activities. The Defendant further acknowledges that he is obligated under his plea agreement to provide additional information about this case beyond that which is described in this Statement of Facts.

15. The Statement of Facts shall be admissible as a knowing and voluntary confession in any proceeding against the Defendant regardless of whether the plea agreement is presented to or accepted by a court. Moreover, the Defendant waives any rights that he may have under Fed. R. Crim. P. 11(f), Fed. R. Evid. 410, the United States Constitution, and any federal statute or rule in objecting to the admissibility of the Statement of Facts in any such proceeding.

Respectfully submitted,

G. Zachary Terwilliger
United States Attorney

By: _____
Carina A. Cuellar
Assistant United States Attorney

Defendant's Signature: After consulting with my attorney and pursuant to the plea agreement entered into this day between the Defendant, Thomas Richard Gallaway, and the United States, I hereby stipulate that the above Statement of Facts is true and accurate, and that had the matter proceeded to trial, the United States would have proved the same beyond a reasonable doubt.

Date: 6/26/2020

_____
Thomas Richard Gallaway
Defendant

Defense Counsel's Signature: I am the attorney for the Defendant, Thomas Richard Gallaway, in this case. I have carefully reviewed the above Statement of Facts with him. To my knowledge, his decision to stipulate to these facts is an informed and voluntary one.

Date: 6/26/2020

_____
Amy Wilson, Esq.
Counsel for the Defendant